UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUHAI SHEN , <br><br>                               Petitioner, <br><br> v. <br><br> Christopher J. LAROSE, Senior Warden, Otay Mesa Detention Center, San Diego, CA; Joseph FREDEN Acting Field Office Director, San Diego Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; Sirce OWEN, Acting Director for Executive Office for Immigration Review; Kristi NOEM, Secretary, U.S. Department of Homeland Security; Pam BONDI, Attorney General of the United States , <br><br>                               Respondents. | Case No.:  25cv3235-GPC(BLM) <br><br> **ORDER GRANTING PETITON FOR WRIT OF HABEAS CORPUS** |

On November 20, 2025, Ruhai Shen ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking to be released from detention.  (Dkt.

1

No. 1, Pet.) Respondents file a return on November 26, 2025, and Petitioner filed a traverse on December 1, 2025. (Dkt. Nos. 4, 5.) Based on the reasoning below, the Court GRANTS the petition for writ of habeas corpus.

## Background

Petitioner, a Chinese national, fled China due to being persecuted for practicing his Christian religion. (Dkt. No. 1, Pet. ¶ 7.) He was arrested, imprisoned and beaten by the Chinese police for allegedly committing the crime of "organizing a cult." (*Id.* ¶ 8.) If he is forced to return, he would have his passport confiscated and face up to 7 years on prison. (*Id.*)

Petitioner arrived in the United States on December 27, 2023 and entered without inspection and without any valid entry documents or visa. (*Id.* ¶ 9.) Upon arrival, he flagged down border officials and told them he had a fear to return to China. (*Id.*)

After a brief detention of less than 24 hours, he was not referred to a credible fear interview and was issued a Notice to Appear ("NTA"). (*Id.* ¶ 10.) He was also released on his own recognizance with conditional parole since it was determined he was not a flight risk, or a danger to the community. (*Id.*) The Order of Release state that he was being released pursuant to conditional parole under 8 U.S.C. § 1226. (*Id.* ¶ 11.) The NTA also states he is an "alien present in the United States who has not been admitted or paroled" under Section 212(a)(6)(A)(i). (*Id.* ¶ 12.) Petitioner has complied with all conditions of his release on conditional parole, attended all court hearings, timely filed his application for asylum, attended his biometrics appointment, requested and received his work permit and obeyed all laws. (*Id.* ¶ 13.)

On October 7, 2025, Petitioner, while working for Lyft, dropped off a client near the U.S.-Mexico border and on his way back to downtown San Diego, he was stopped at a Border Patrol checkpoint and was arrested. (*Id.* ¶ 14.) He is being detained at the Otay Mesa Detention Center in San Diego, California. (*Id.* ¶ 1.)

Petitioner has lived in the United States for two years and built extensive community ties. (*Id.* ¶ 17.) He has no criminal record and there are no changed

circumstances from the time he was initially apprehended and released. (*Id.* ¶¶ 15, 17.) His proceedings in immigration court are continuing. (*Id.* ¶ 16.) According to Respondents, Petitioner is in removal proceedings pursuant to 8 U.S.C. § 1229a.

Petitioner asserts that his detention violates the Immigration and Nationality Act ("INA"), Fifth Amendment Due Process Clause, and the Administrative Procedures Act ("APA"). (*Id.* ¶¶ 93-108.) He requests a writ of habeas corpus ordering his release, or in the alternative, ordering Respondents to conduct a bond hearing before this Court, or alternatively, order an immediate bond hearing before a neutral decisionmaker. (Dkt. No. 1, Pet. at p. 33-34.)

## LEGAL STANDARD

### A. Section 2241 Habeas Corpus

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### B. Detention and Removal Statutory Framework

Petitioner and Respondents dispute whether Petitioner's detention is governed by 8 U.S.C. § 1225 or § 1226. The removal and detention of noncitizens is primarily governed by these two statutes:

**1. Section 1225**

"Section 1225 governs DHS's determination of admissibility for a noncitizen seeking entry into the country, which 'generally begins at the Nation's borders and ports of entry.'" *Martinez Lopez v. LaRose*, No. 25-CV-2717-JES-AHG, 2025 WL 3030457, at *3 (S.D. Cal. Oct. 30, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). The section provides for the inspection of "applicants for admission," who are defined as "alien[s] present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). During inspection, an immigration officer may deem certain noncitizens who are "arriving in the United States" inadmissible and order their removal without further hearing or review. 8 U.S.C. § 1225(b)(1)(A)(i); *see also Martinez Lopez*, 2025 WL 3030457, at *3. Other "applicant[s] for admission" who are "seeking admission" are subject to mandatory detention pending the duration of removal proceedings unless the examining officer determines that the individual is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

### 2. Section 1226

Section 1226, which governs the "usual removal process," *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108, (2020), generally governs the process under which noncitizens, located within the United States, are arrested and detained pending their removal. *Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining [aliens present in the country] pending their removal."). It provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The government may then either continue to detain the individual or release them on bond or conditional parole. *Id.* § 1226(a)(1)-(2). "The initial determination is made by the arresting immigration officer, but noncitizens may lodge an appeal in a bond hearing before an immigration judge." *Martinez Lopez*, 2025 WL 3030457, at *4 (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)). Noncitizens who have committed certain crimes described in § 1226(c) are not subject to release under § 1226(a).

///

# DISCUSSION

## A. Subject Matter Jurisdiction

Respondents maintain that this Court lacks jurisdiction over Petitioner's claims under 8 U.S.C. §§ 1252(b)(9) and (g). (Dkt. No. 3 at 7-10.[1]) Petitioner argues that § 1252(b)(9) does not bar habeas review of collateral custody challenges and § 1252(g) does not apply in this case. (Dkt. No. 6 at 2-3.)

### 1. Section 1252(g) – Decisions by Attorney General

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien[.]" 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482. Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). This section does not apply to "general collateral challenges to unconstitutional practices and policies used by the agency." *Id.* (internal quotation mark and citation omitted).

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the decision or action by the Attorney General to commence proceedings [and] adjudicate cases." (Dkt. No. 3 at 7-8.) Petitioner responds that he does not challenge DHS's decision to initiate removal proceedings, or anything related to his removal proceedings; rather he is challenging is re-detention under § 1225(b)(2) and the revocation of his conditional parole. (Dkt. No. 6 at 2.)

---

[1] Page numbers are based on the CM/ECF pagination.

The Court agrees with Petitioner that how DHS exercises its detention authority classifying Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See e.g., Constantinovici v. Bondi*, -- F. Supp. 3d --, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) (court has jurisdiction to consider challenges to detention as unlawful); *Chavez v. Noem,* -- F. Supp. 3d --, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (detention may be during but nonetheless independent of the removal proceedings); *Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *3-4 (S.D. Cal. Sept. 3, 2025) (Petitioners' challenge to the new bond policy and the immigration judge order considering Petitioners detained under § 1225 rather than § 1226(a) does not fall under § 1252(g)).

Thus, § 1252(g) does not present a jurisdictional bar to the instant petition.

### 2.     Section 1252(b)(9) – Zipper Clause

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order."  8 U.S.C. § 1252(b)(9).  Section 1252(b)(9) is seen as a general jurisdictional limitation that channels judicial review of immigration actions and decisions and acts as a zipper clause. *Reno,* 525 U.S. at 483.  "However, what it 'zips' are requests for review of various kinds of agency action which are heard by means of petitions for 'judicial review' . . . [i]t does not affect petitions for habeas corpus." *Flores-Miramontes v. I.N.S.*, 212 F.3d 1133, 1139 (9th Cir. 2000).  Claims that are "independent of or collateral to the removal process," including the legality of detention, fall outside the scope of § 1252(b)(9). *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (citation and internal quotations omitted) ("Section 1252(b)(9) is also not a bar to jurisdiction over noncitizen class members' claims because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process."); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Respondents claim that any issue, directly or indirectly, arising from any removal related activity can only be reviewed through a petition for review with the court of appeals and divests this Court of jurisdiction. (Dkt. No. 3 at 8-10.) Therefore, because Petitioner is challenging the government's decision to detain him which arises from DHS's decision to commence removal proceedings, his claim is barred under § 1252(b)(9). (*Id.* at 10.) Petitioner disagrees arguing that he is not challenging any action with respect to his removal proceedings but challenging his unlawful detention. (Dkt. No. 6 at 2.)

The Court agrees with Petitioner that he is challenging his detention under § 1225(b)(2), and not DHS's decision to commence removal proceedings. (Dkt. No. 6 at 3; *see also* Dkt. No. 1, Pet. ¶¶ 2, 44.) "Petitioner's detention may be during, but is nonetheless independent of, the removal proceedings." *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, at *4 (S.D. Cal Oct. 30, 2025). Thus, § 1252(b)(9) does not present a jurisdictional bar.[2]

---

[2] In a footnote, the government alternatively argues that the Court should ensure that Petitioner has properly exhausted administrative remedies. (Dkt. No. 3 at 10 n.1.) In her petition, Petitioner asserts that any appeal to the BIA is futile in light of the BIA's precedential decisions in *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 20 I&N Dec. 66 (BIA 2025), where the IJs held they lacked jurisdiction to hold a bond hearing for a noncitizen arrested and charged with being inadmissible under § 1182(a)(6)(A)(i) as they are "applicants for admission" and subject to mandatory detention without bond under § 1225(b)(2). (Dkt. No. 1, Pet. ¶¶ 27-30.)

A petitioner must exhaust administrative remedies by appealing to the BIA before seeking judicial remedies and include bond determinations. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

BIA's precedential decisions "serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. §§ 1003.1(g)(1), (d)(i). Because *Matter of Yajure-Hurtado* and *Matter of Q. Li* received citation designations, *Matter of Yajure-Hurtado* and *Matter of Q. Li* are precedential decisions.

B.  **Merits**

Petitioner challenges his current detention on constitutional and statutory grounds.

### 1. Petitioner's Continued Detention Violates His Due Process Rights

Petitioner argues that his re-detention on October 7, 2025, after he had been briefly detained and released on conditional parole pursuant to 8 U.S.C. § 1226(a) in December 2023, without any explanation or change in circumstance, violates the Due Process Clause of the Fifth Amendment. (Dkt No. 1, Pet. ¶¶ 53-74.) Respondents do not directly address the due process arguments but instead contend that that the INA provides ICE with discretionary authority to decide whether to release a noncitizen under § 1226(a) as well as revoke its parole decisions. (Dkt. No. 3 at 15-17.)

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. United States Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz*

---

Therefore, because the BIA is likely to hold that anyone who is deemed "[a]n alien present in the United States without being admitted or paroled," will be subject to mandatory detention without bond under § 1225(b)(2), Petitioner has shown that a BIA appeal would be futile. Accordingly, the Court finds that the prudential exhaustion requirement is waived. *See Beltran v. Noem,* No. 25cv2650-LL-DEB, 2025 WL 3078837, at *4 (S.D. Cal. Nov. 4, 2025) (exhaustion futile under *Matter of Yajure Hurtado*); *Singh*, 2025 WL 1918679, at *4 (waiving exhaustion because it would be futile in light of *Matter of Q. Li*).

*Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025).  In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025).  Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros,* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) and *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

Here, because Petitioner was detained and then released from DHS custody on his own recognizance, he maintained a protected liberty interest in remaining out of custody.

The Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481. "The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976).  *See Ortiz Donnis*, 2025 WL 2879514, at *12.  Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures."  424 U.S. at 335.

As to the first *Mathews* factor, Petitioner has a significant private interest in his continued liberty. Thus, this factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12; *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, petitioner has not received any bond or custody hearing, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Id.* (quoting *Singh v. Andrews*, --F. Supp. 3d--, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner in December 2023 on his own recognizance, immigration officers determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034.

Respondents have not argued that there has been a change in circumstance since Petitioner's 2023 release. Instead, they argue that INA provides ICE with the discretionary authority to decide whether to release a noncitizen under § 1226(a) as well as revoke its parole decisions relying on 8 C.F.R. §§ 241.4(l)(2)(i), (iv).[3] (Dkt. No. 3 at 15-17.)

---

[3] Sections 241.4(l)(2)(i), (iv) provides,
    The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
    (i) The purposes of release have been served;
    . . .
    or

However, those provisions apply when a final removal order has been issued. *See id.; Constantinovici,* 2025 WL 2898985, at \*4 (noting that the government has promulgated regulations, citing 8 C.F.R. § 241.4, concerning the release of noncitizens who are subject to a final removal order). Here, Petitioner has not been issued a final removal. Therefore, Respondents' argument is not persuasive.

Petitioner asserts that he has no criminal history, has complied with all conditions of his release on conditional parole, attended all court hearings, timely filed his application for asylum, attended his biometrics appointment, requested and received his work permit and has obeyed all laws. (Dkt. No. 1, Pet. ¶¶ 13, 15.) He has also lived in the United States for two years and has established community ties. (*Id.* ¶ 17.) Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly, this factor also favors Petitioner.

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at \*9; *Salcedo Aceros*, 2025 WL 2637503, at \*12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at \*8 (internal quotation marks and citation omitted). On the other hand, the costs of immigration detention are staggering. *Hernandez v. Session*, 872 F.3d 976, 996 (9th Cir. 2017). In sum, the Government's interest in detaining Petitioner without a hearing is low. *See Singh*, 2025 WL 1918679, at \*8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite its own prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's

---

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15. The Court concludes that Petitioner is entitled to relief under the due process clause.

### 2. Petitioner's Detention and Release Proceedings are Governed by § 1226.

In addition to challenging the constitutional validity of petitioner's re-detention, Petitioner's habeas petition further raises the question of whether § 1225(b)(1) or § 1226(a) applies to his detention. Respondents contend that Petitioner is an "alien present in the United States who has not been admitted," and is thus an "applicant for admission" per the plain language of the § 1225(a)(1) and subject to the mandatory detention provisions of § 1225(b)(2). (Dkt. No. 3 at 11.) Petitioner asserts that, to the extent he is subject to detention, his detention is governed by § 1226 and Respondents have not explained why he is subject to § 1225's mandatory detention provisions when he was originally released under § 1226 in December 2023. (Dkt. No. 6 at 4.)

The Court agrees with Petitioner. "As a preliminary matter, whether the Government may have had the power to detain [Petitioner] under 1225(b), the reality is that the detention authority consistently applied by the government to [Petitioner] since his arrival in the United States has always been § 1226." *Salcedo*, 2025 WL 2637503, *8. When Petitioner entered the United States in 2023, the Government issued a Notice to Appear and chose to release him on conditional parole on his own recognizance under § 1226(a), not hold him in mandatory detention under § 1225(b)(2). *See id.*; *see also*

*Valencia Zapata v. Kais er*, No. 25-CV-07492-RFL, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025).

Sections 1226(a) and 1225(b) cannot be applied to Petitioner simultaneously, as one provides for discretionary release with procedural protections while the other mandates detention without discretion. *Salcedo*, 2025 WL 2637503, *8. The record indicates that Petitioner was previously subject to § 1226(a). The government cannot now "simply switch tracks" without explanation or any basis and purport to subject Petitioner to mandatory detention under § 1225(b) after previously releasing him under § 1226(a). *See Acosta v. Bondi*, No. 25-CV-09601-HSG, 2025 WL 3229097, at *3 (N.D. Cal. Nov. 19, 2025).

Aside from the fact that Petitioner was previously detained under § 1226(a) and the Government cannot now switch tracks, the statutory language further indicates that § 1226(a) rather than § 1225(b) applies to Petitioner.

As discussed above, § 1225 governs expedited removal proceedings and concerns "applicants for admission" who are defined as "alien[s] present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). If an applicant "who is arriving in the United States" is deemed inadmissible after inspection, the applicant will be subject to expedited removal "without further hearing or review." *Id.* § 1225(b)(1)(A)(i); *see also Martinez Lopez*, 2025 WL 3030457, at *3. Other applicants for admission who are "seeking admission" will be mandatorily detained pending removal proceedings unless they are "clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). In contrast, § 1226 is the "usual removal process" and does not concern expedited removal. *See Thuraissigiam*, 591 U.S. at 108. It provides that while removal proceedings are pending, a noncitizen "may be arrested and detained," but that the government "may release the alien . . . on conditional parole." *Id*. § 1226(a). Once the government makes an initial decision to either detain or release the noncitizen, the noncitizen may request a bond hearing before an immigration judge. *Id* § 1226(a)(1)-(2); 8 C.F.R. § 1236.1.

As an initial matter, "the plain text of § 1225(b)(2) does not support Respondents' contention that it applies to any noncitizen present in the United States who has not been admitted." *See*, *e.g.*, *Beltran*, 2025 WL 3078837, at *5; *Martinez Lopez*, 2025 WL 3030457, at *5 (adopting the reasoning of *Vazquez v. Feeley*, No. 2:25-CV-01542, 2025 WL 2676082, at *16 (D. Nev. Sept. 17, 2025)). Respondent's interpretation of the phrase "seeking admission" in § 1225(b)(2)(A) would "seemingly render that phrase mere surplusage," such that "the language could be deleted while retaining the same statutory meaning." *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346, at *3 (S.D. Cal. Oct. 27, 2025). Such an interpretation runs counter to the interpretive canon that a court "must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous. *Rodriguez v. Sony Computer Ent. Am.*, LLC, 801 F.3d 1045, 1051 (9th Cir. 2015).

Instead, "seeking admission" is best understood to require "an affirmative act such as entering the United States or applying for status." *Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *see also Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."). Thus, here, Petitioner was not "seeking admission" within this interpretation. He was arrested in the interior of the United States, not while presenting himself at the gate of entry to attempt to apply for admission.

Second, Respondents' interpretation blurs the lines between § 1225(b) and § 1226(a). The Supreme Court has acknowledged that "U.S. immigration law authorizes the government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already

in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Thus, the Supreme Court has interpreted § 1225(b) as applying to "aliens seeking admission to the country," while § 1226(a) applies to "aliens already in the country." *Id.* Here, Petitioner is sensibly characterized as a noncitizen "already in the country" rather than one "seeking admission" given that he has lived in the United States for two years and had a pending immigration proceeding at the time of his detention.

In sum, based on the statutory language and Petitioner's facts, the Court finds that Petitioner is not subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's removal proceeding is governed by § 1226(a).[4]

## CONCLUSION

Based on the reasoning above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.
2. Because the government has no evidence that Petitioner poses a flight risk or danger to the community, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody under the same conditions as his previous order of release on recognizance.
3. Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.

///
///

---

[4] Having reached its conclusion on Petitioner's INA and due process claims, the Court declines to decide the merits of Petitioner's APA claim.

1   4.  The Clerk of Court SHALL enter judgment in Petitioner's favor and close this
2       case.
3   **IT IS SO ORDERED.**
4   Dated:  December 11, 2025

Hon. Gonzalo P. Curiel
United States District Judge